22117. HAM *v.* THE STATE.

DECIDED APRIL 30, 1932.

*Chester A. Byars, Leward Hightower, Durwood T. Pye, M. G. Hicks,* for plaintiff in error.

*E. M. Owen, solicitor-general, John S. McClelland,* contra.

LUKE, J. On February 23, 1931, the grand jury of Pike county returned an indictment against "R. F. alias 'Red' Craig, E. O. alias 'Slick' Able, and Monroe Ham," charging that they did, on January 24, 1931, in said county, "assist one Tom Aiken, a prisoner, to escape and attempt to escape from the lawful custody of R. T. Tolbert, a lawful deputy sheriff of Fulton county, Georgia, the said Tom Aiken being then and there in the lawful custody and charge of the said R. T. Tolbert under and by virtue of a criminal warrant issued from and by the Criminal Court of Atlanta . . and by Jesse Wood, Judge of said court, charging the said Tom Aiken with offense of violating prohibition law and possessing intoxicating liquors."

The defendant, Monroe Ham, was tried and convicted in the superior court of Pike county on August 13, 1931, and sentenced to serve from three to five years in the penitentiary. Plaintiff in error is insisting only upon the general grounds of his motion for a new trial, and one special ground based upon alleged newly discovered evidence.

R. T. Tolbert testified in substance that as deputy sheriff of Fulton county, he presented a warrant for Tom Aiken to the sheriff of Pike county on January 24, 1931, and Aiken was delivered to him in the sheriff's office; that at about 8 o'clock on the morning of the same day, witness left Thomaston with Aiken for Atlanta over route 3; that after they had gone about five miles, Aiken asked permission to get out and urinate; that witness had proceeded only a short distance towards "a fill at a little branch" for the purpose of stopping, when a Buick automobile came dashing by and stopped in front of witness's car; that witness threw on his brakes and stopped his car, and got out and asked the driver of the Buick, "Slick" Able, and his companion, Monroe Ham, "what it meant," but that neither of them answered him; that Aiken slid out of the car and came around to the front of it, and witness started to head him off; that Ham, who was sitting on the right side of his car, with the door open, swung out on the running-board and knocked witness down; that Aiken had reached the open door of Ham's car, and Ham was pulling him in, while the car was moving, when witness shot five times, one of said shots striking Aiken; that Aiken was handcuffed; that witness knew Able, and Able knew that witness was a deputy sheriff from Fulton county; that witness had seen Ham prior to that time, but did not know him personally; and that witness got in his automobile and pursued the Buick car for several miles but did not catch it. (Aiken was caught later, with the handcuffs cut off his wrists, at the house of an acquaintance, one Charley Hall.)

Tom Aiken testified in substance that Tolbert stopped his automobile and got out to urinate, and asked witness if he did not want to urinate also, and that they were both on the ground when Ham and Able drove up in said Buick automobile and stopped, and said, "Hello, Tom, what you doing handcuffed?"; that witness then asked Tolbert if witness could "speak to the boys about an automobile he had bought  .  .  in Atlanta" and hadn't finished paying for; that Tolbert, who had taken several drinks, "wobbled his head around like a drunk man" and said, "Go ahead;" that witness was telling "those boys" about his car, and the next thing he knew he was shot in the right hip; that nobody struck Tolbert; that witness had not entered into a conspiracy "with those boys .  .  to get away from there," and was not trying to escape; that

witness had proceeded up the road about three or four miles with Ham and Able when the Buick got a flat tire and stopped; that Laws Ledford and Jim Melton came up and carried witness to Charlie Hall's and cut the handcuffs off his wrists; that witness was under a suspended sentence "for possessing twenty-five gallons of whisky on Lyons Avenue on February 28, 1930," and knew that Judge Wood was going to revoke that sentence, and "wanted to get through with it as quick as possible."

E. O. Able swore that he and Ham stopped to see if Tolbert and Aiken were having car trouble; that witness "knew Mr. Tolbert, and knew Tom Aiken pretty well;" that Aiken asked Tolbert's permission "to speak to us," and came over and talked about getting Jim Little to get his automobile; that neither witness nor Ham made any attempt to rescue Aiken, and that Aiken was urinating when he was shot; that there was no conspiracy to aid Aiken to escape; that Tolbert looked drunk; that when Aiken was shot he fell backwards, and hung on the car, and "drug himself in with his elbows;" and that, while witness "pulled him some" after he fell in witness's lap, witness "was not helping him" because he "wanted to aid him in any way to escape."

In addition to what has been said, we will state that there was evidence to the effect that Craig, Able, and Ham left Thomaston shortly after Tolbert and Aiken did, and that the jury may have inferred from all the circumstances surrounding the transaction that the defendant, Ham, had entered into a conspiracy to rescue Aiken from officer Tolbert.

Counsel for plaintiff in error insist in their brief that the evidence fails to show either that "the prisoner was in the act of escaping," or that "plaintiff in error knowingly assisted the prisoner to escape." While we have not attempted to summarize the testimony of all the witnesses, we think that we have stated enough of their testimony to refute the foregoing contentions of counsel for plaintiff in error. In short, we hold that the evidence abundantly supports the verdict, and that the trial judge did not err in overruling the general grounds of the motion for a new trial.

The gist of the only special ground insisted upon is that, since the rendition of the verdict against the defendant, he discovered evidence which would show that Aiken was not in lawful custody at the time the defendant is alleged to have assisted him to escape,

for the reason that the bench warrant under which Aiken was being held was issued by Judge Wood, of the criminal court of Atlanta, without legal authority. It appears from the ground that said bench warrant, which was issued January 2, 1931, purports to be based upon an accusation against Aiken for violating the prohibition law, which was drawn at the March term 1930 of the criminal court of Atlanta, and that C. E. McCrary swore out said warrant and was the prosecutor in the case. It also appears that Tom Aiken pleaded guilty of said charge on March 7, 1930.

We next quote from the joint affidavit of attorneys Leward Hightower and M. G. Hicks as follows: "Each deponent says that on the 30th day of October, 1931, he examined the records of said criminal court of Atlanta; that he examined said records particularly with reference to any and all accusations, warrants, and affidavits issued against Tom Aiken. . . Each deponent swears that he finds, as a result of his said careful, accurate, and diligent examination of said records of said court, that on the 2d day of January, 1931, there was pending in said court against said Tom Aiken no affidavit or accusation or charge of any kind undisposed of; that deponents found from said examination that there had theretofore been returned in said court eight accusations against said Aiken, said accusations bearing the following numbers: 86353, 96267, 97713, 99895, 99896, 100403, 100065; but all of said accusations had, prior to the 2d day of January, 1931, been disposed of by convictions thereon of said Aiken, except accusation number 97713, which, in the year 1930, had been dead-docketed, and which has never yet been removed from said dead docket, which said accusation was based on an affidavit of one W. A. Wells, and which accusation was found at the September term, 1929. . . Deponent further found from said examination that there was but one accusation in said court against said Aiken found or preferred or sworn out during the March, 1930, term thereof, and that this accusation bore, and now bears, the number 100403, and that the same charges the said Aiken with violating the prohibition law, the affidavit in connection with said accusation having been made by C. E. McCrary on the 6th day of March, 1930, and that on the 7th day of March, 1930, said accusation was disposed of by the conviction of Aiken thereon."

Defendant's counsel who represented him at the trial of his case

made a joint affidavit, each swearing that "he did not know of the evidence set out in the second ground of the motion for a new trial . . before the trial of the case, or during the trial of the case, and that the same could not have been discovered by the exercise of ordinary diligence;" and that "the records of the criminal court of Atlanta referred to in said ground were out of the clerk's office of said court and not available before the trial or during the same." The affidavit of the defendant as to diligence is substantially the same as that of counsel.

The indictment against the defendant in this case was returned on February 23, 1931. He was tried on August 13, 1931. The search of the records of the criminal court of Atlanta was not made until October 30, 1931, and there is nothing to show that any attempt to find the alleged newly discovered evidence was made sooner. When the attorneys representing the defendant first became his counsel does not appear. What prompted the belated search for said evidence does not appear, and why the search was not instituted sooner does not satisfactorily appear. Counsel, however, contend that, in any event, they were not called upon, in the exercise of ordinary diligence, to suspect that said bench warrant was illegal, for the reason that there was a legal presumption that the judge of the criminal court of Atlanta had performed his duty properly, and that he had legal ground for issuing said warrant. It is quite true that there is a presumption that a judge does his duty, but (without intending to say that he made a mistake in this instance) it would be going too far to assume that a judge never makes mistakes. Whether or not the warrant under which Aiken was being held was a legal warrant was a highly important question in the case, and counsel, of course, realized that fact. In this connection it may not be amiss to say that when said warrant was offered in evidence, counsel objected to it "on the grounds that it is not a legal warrant, for the reason that the judge of the criminal court of Atlanta has no authority to issue a bench warrant for any offense where no affidavit has been filed or no bond has been forfeited."

Under the facts of the case, this court declines to say that there was not ground for the trial judge to conclude that proper diligence had not been exercised to discover said evidence before or during the trial. Therefore we hold that the court did not commit revers-

ible error in overruling this ground of the motion for a new trial.

Having reached the foregoing conclusion, it is not necessary to consider the counter-showing of the State in regard to the alleged new evidence. However, merely to clear up the "mystery of the missing evidence," we will state that the deputy clerk of the criminal court of Atlanta makes affidavit that none of the "papers . . set out in ground 2 of the motion for a new trial" were removed from the office of the clerk of said court, "with the exception that the original accusations on file were turned over to John S. Mc-Clelland, solicitor of the criminal court of Atlanta, for the purpose of using said accusations in a trial of movant in Pike county at the time of said trial;" that when counsel applied to deponent for said accusations in October, 1931, deponent "secured said accusations and presented them to the attorney herein within a few days from the time the said request was made;" and that "the record of said accusations and the disposition of said cases by the court appeared on the dockets of the criminal court of Atlanta, which were at all times available to all persons, and deponent did have, and could have secured and turned over, a certified copy of said accusations to any person at any time upon request."

*Judgment affirmed. Broyles, C. J., and Jenkins, P. J., concur.*